United States Court of Appeals,

Fifth Circuit.

No. 92-8333

Summary Calendar.

Noble Lee SIMPSON, Petitioner-Appellant,

v.

Carlos ORTIZ, Warden FCI, Bastrop, U.S. Parole Comm., et al., Respondents-Appellees.

July 16, 1993.

Appeals from the United States District Court for the Western District of Texas.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM.

Noble Lee Simpson, a federal prisoner proceeding pro se, brought this habeas action to challenge a parole commission determination and obtain a writ of habeas corpus. The district court granted summary judgment in favor of respondents, and Simpson appeals from that judgment. Finding that there is no genuine issue for trial, we affirm.

**I**

Noble Lee Simpson was convicted in 1982 for conspiracy to possess with intent to distribute methaqualone. He was sentenced to an aggregate fifteen-year term of imprisonment, to be followed by a ten-year special parole term. While serving this sentence, Simpson escaped in 1984 and returned to the business of drug smuggling. He was apprehended in 1985, pled guilty to willfully escaping from a federal prison in violation of 18 U.S.C. § 751(a), and was sentenced to a term of six months to be served consecutively to his earlier prison term. In 1987, Simpson was indicted for and convicted of participating in conspiracies to import and distribute marijuana and cocaine while a fugitive; he was sentenced to an aggregate term of forty years in prison, to be followed by a six-year special parole term.

Simpson's original presumptive parole eligibility date—the date based only upon his first conviction—was May 11, 1987. When the parole commission learned of his escape conviction in

March 1987, it ordered that Simpson's case be reopened. In June 1987, because of Simpson's 1987 conspiracy convictions and his new forty-year sentence, the Parole Commission issued a notice of action rescinding his May 11, 1987 presumptive parole date.

In October 1990, Simpson applied for a parole hearing to determine his release date. A prehearing assessment was prepared in November 1990. The reviewer addressed Simpson's escape and conspiracy convictions and, noting that Simpson had escaped from custody and was involved in a conspiracy to import more than 15 kilograms of cocaine and more than 50 kilograms of marijuana, tentatively raised his offense behavior to category eight severity under the Sentencing Guidelines. The reviewer ultimately estimated Simpson's Guideline range at 150+ months.

Simpson's parole hearing was held in December 1990, and the examiners discussed his three offenses. Simpson admitted his culpability regarding his 1982 conviction for conspiracy to possess methaqualone with intent to distribute, and he presented reasons for his escape. He also denied the magnitude of the culpability outlined in his presentence report (PSI) as to his 1987 conviction for participating in marijuana and cocaine conspiracies, asserting that he was merely a member of one of the conspirators' ground crews. Nevertheless, the examiners rated Simpson's cocaine offense as being of category eight severity under the Sentencing Guidelines because he had participated in a conspiracy to import more than 18.75 kilograms of ungraded cocaine. Moreover, despite Simpson's assertion the he was simply a member of a ground crew, the examiners determined that Simpson held a specialized role as an airplane mechanic.[1] Nevertheless, based on Simpson's limited role and the fact that the cocaine conspiracy to import illegal drugs from Mexico to the United States was never completed,[2] the hearing examiners recommended that Simpson be released after serving 152 months. They also recommended that, because he had superior adjustment and work records, Simpson be

[1]As stated in the magistrate judge's report and recommendation, this court has acknowledged that Simpson played more than a peripheral role in the conspiracy. *See United States v. Simpson,* 901 F.2d 1223, 1228-9 (5th Cir.1990). Specifically, Simpson originally planned to be part of the flight crew but, because he believed the plane used by the conspirators was not safe, he refused to fly on it and then became a member of the ground crew. *Id.* Moreover, Simpson apparently directed some of the ground crew operations. *Id.*

[2]The conspirators' flight crew was forced to make an abortive landing in Maraquita, Columbia, where they were arrested.

given twenty-four months of program achievement credit; this would have resulted in Simpson serving 128 months and, in light of the 91 months he had already served, would have given him a presumptive parole date of January 24, 1994.

The regional commissioner, believing the seriousness of Simpson's offenses outweighed his institutional achievements, disagreed with the hearing examiners' recommendation. He determined that Simpson should serve the full 152 months, which resulted in a presumptive parole date of January 24, 1996. Simpson then appealed the regional commissioner's decision to the National Appeals Board, which found that Simpson's role in the conspiracy was not peripheral and that his institutional achievements were not sufficient to warrant a more lenient decision. Accordingly, the National Appeals Board affirmed the Regional Commissioner's decision.

Simpson challenged the decision of the National Appeals Board by filing a petition pursuant to 28 U.S.C. § 2241, in which he named the United States Parole Commission and Carlos Ortiz, warden of the Bastrop Federal Corrections Institution, as respondents. The matter was referred to a magistrate judge, and the government then moved to dismiss the action or, in the alternative, for summary judgment on behalf of the respondents. The magistrate judge recommended that respondents' motion for summary judgment be granted, and the district court adopted that recommendation. Simpson now appeals from the district court's grant of summary judgment in favor of respondents.

## II

Simpson raises the following challenges to the district court's determination: (a) whether the district court applied the proper standard of review; (b) whether, by delaying the resolution of this action for thirteen months, the magistrate judge failed to comply with 28 U.S.C. §§ 2241-2243; (c) whether the Parole Commission's use of its 1990 rules and guidelines violated the ex post facto clause; and (d) whether the Parole Commission violated the doctrine of separation of powers by establishing parole eligibility guidelines which exceed those established by Congress.

## A

Simpson's first assertion on appeal is that the district court erred by considering "incredible"

evidence which should have been rejected under the preponderance of the evidence standard and that, by relying on this evidence, the court reached erroneous conclusions. In considering similar challenges, we have held that the Parole Commission has "absolute discretion concerning matters of parole" and "may use all relevant, available information in making parole determinations." *Maddox v. U.S. Parole Commission,* 821 F.2d 997, 999 (5th Cir.1987). In fact, we have stated that "[t]he Commission may take into account *any* substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." *Id.* (internal quotations omitted and emphasis added). Accordingly, we approach Parole Commission conclusions with extreme deference, reviewing them only to determine "whether there is "some evidence' in the record to support the Commission's decision." *Maddox,* 821 F.2d at 1000 (citation omitted).

Simpson asserts that the Parole Commission and district court erred by concluding that this court affirmed his underlying cocaine conviction. According to Simpson, he "was tried and convicted for three conspiracies; *two* were for marijuana and [t]he third was [for] *cocaine.* [T]he two marijuana conspiracies were affirmed on appeal. The third (cocaine) was not." In short, Simpson is mistaken: Simpson was convicted of participating in a conspiracy to distribute marijuana (the "Granbury conspiracy") and in a conspiracy to distribute cocaine (the "Maraquita conspiracy"), and this court affirmed both of his convictions. *See Simpson,* 901 F.2d at 1225-26. Simpson also challenges the district court's reliance on our determination that "[t]he evidence overwhelmingly indicate[s] that he was more than a minor player in both conspiracies, if not indeed a major player." *Id.* at 1227. This conclusion is fully supported by witness testimony. *See id.* (including references to specific testimony). Because there is substantial evidence in the record to support the Parole Commission's conclusions which Simpson challenges, we find that his challenges are without merit. *See Maddox,* 821 F.2d at 1000.

**B**

Simpson also asserts that the district court violated his statutory right to a speedy resolution

of his habeas petition,[3] thereby denying him constitutional due process. Specifically, Simpson contends that the district court failed to comply with the statutory requirement under section 2243 of Title 28 that it "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted" and "summarily hear and determine the facts, and dispose of the matter as law and justice require."

The show cause order in the case before us was issued just twenty-one days after Simpson's petition was filed, and only eight days after the matter was referred to the magistrate judge. Accordingly, the district court did comply with the statutory requirement that it forthwith issue the writ or the show cause order. *See* 28 U.S.C. § 2243. As for Simpson's assertion that the district court failed to "summarily hear and determine the facts, and dispose of the matter as law and justice require[,]" the record indicates that there was a six-month delay between the filing of Simpson's response to the government's motion to dismiss and the filing of the magistrate judge's report and recommendation. However, this delay was caused by the administrative necessity of transferring Simpson's case from one docket to another—not by neglect or indifference.[4] *Cf. Ex parte Royall,* 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886) ("The injunction to hear the case summarily, and thereupon "to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it."). Moreover, we have expressly stated that, "[b]efore we will issue [a writ of habeas corpus], the petitioner must demonstrate that he has suffered some prejudice as a result of the alleged constitutional violation...." *Brown v. Collins,* 937 F.2d 175, 182 (5th Cir.1991); *see also Clark v. Maggio,* 737 F.2d 471, 475-76 (5th Cir.1984) ("[W]e do not grant a writ of habeas corpus in every

---

[3]*See* 28 U.S.C. §§ 2241-43.

[4]To support his assertion that the district court has violated the timeliness requirement of section 2243, Simpson relies upon the Eighth Circuit's opinion in *Jones v. Shell,* 572 F.2d 1278, 1280 (8th Cir.1978). *Jones* is readily distinguishable from the case before us, for the petitioner in *Jones* challenged a fourteen-month delay which arose after the Eighth Circuit remanded his case to the district court with specific instructions. *Id.* ("Busy court dockets cannot justify a 14-month delay in processing this claim from the date of remand."). Moreover, the petitioner in *Jones* brought a mandamus action to compel the district court to act in accordance with the directive contained in the court of appeals' mandate. Simpson has not brought a mandamus action in the case before us.

instance in which the state has failed to conform to constitutional requirements."), *cert. denied,* 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985).  Because the delay in the case before us was not unreasonable and Simpson has made absolutely no showing that he was in any way prejudiced by it,[5] we conclude that Simpson's section 2243 claim is without merit.

## C

Next, Simpson asserts that the Parole Commission erred at his second Parole hearing by applying its 1990 rules and guidelines, thereby violating its own rule that it will only apply guidelines in effect during a prisoner's first parole hearing.  Simpson asserts in a summary fashion that the Commission's application of its 1990 guidelines "substantially diminish[ed] or eliminat[ed] [his] *eligibility* for parole[,]" thereby violating the ex post facto clause.[6]

The Parole Commission determines a prisoner's suitability for parole, not his eligibility, for the latter is determined by the length of one's sentence.  *See* 18 U.S.C. §§ 4205(a) (eligibility for parole), 4206(a) (suitability for parole).  Specifically, pursuant to section 4205(a), Simpson became *eligible* for parole after serving one-third of his sentence.  As for Simpson's suitability for parole, the Parole Commission may not grant parole unless it, based

> upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:  (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law;  and (2) that release would not jeopardize the public welfare.

18 U.S.C. § 4206(a).  In sum, as we stated in *Stroud v. United States Parole Commission,* 668 F.2d 843, 847 (5th Cir.1982), "parole is not a right, but rather only an expectation that may be granted by the Commission."

Although Simpson has not presented his ex post facto assertion to this court with specificity,

---

[5]We note that Simpson's presumptive release date is January 27, 1996 and, even if he were given the achievement credit which he was denied, Simpson's presumptive parole date would not be until January 24, 1994.  Because these dates have not yet arrived, it is clear that Simpson has not been prejudiced in the sense that his period of incarceration has not been extended by the district court's six-month delay.

[6]The ex post facto clause prohibits laws that make the punishment for a crime more burdensome than it was when the crime was committed.  *See Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977).

we have addressed what appears to be a very similar challenge in *Sheary v. United States Parole Commission,* 822 F.2d 556, 558 (5th Cir.1987). In *Sheary,* we explained that the guidelines in 28 C.F.R. § 2.20 are the means by which the Parole Commission determines a prisoner's *suitability* for parole once he is eligible to be paroled, while a prisoner's *eligibility* for parole "is determined by the sentence imposed by the trial court."[7] More importantly, we acknowledged that "no Court of Appeals has held that the parole guidelines are laws, and thus can violate the ex post facto clause." *Id.* Moreover, Simpson's assertion is even weaker than the challenge we defused in *Sheary,* for Simpson escaped subsequent to his first parole hearing and committed a more serious offense. Accordingly, we find that Simpson's assertion that the Parole Commission's application of its 1990 guidelines at his second parole hearing violated the ex post facto clause is without merit.

### D

Simpson's final challenge is that the Parole Commission violated the doctrine of separation of powers by establishing parole eligibility guidelines which exceed those established by Congress. Specifically, Simpson asserts that "[t]he Parole Commission administratively set minimum guidelines for everyone that were twenty-months higher than one-third the statutory maximum sentence[,]" and that this constitutes a violation of the doctrine of separation of powers.

As stated above,[8] the Parole Commission determines a prisoner's suitability for parole, not his eligibility, and Congress has vested the Parole Commission with the authority to "grant or deny an application or recommendation to parole any eligible prisoner." 18 U.S.C. § 4203(b)(1); *see Stroud,* 668 F.2d at 847 ("[P]arole is not a right, but rather only an expectation that may be granted by the Commission."). Although we have not directly addressed the precise issue now before us, the Third Circuit has held that Congress did not impermissibly delegate its legislative authority when it authorized the Parole Commission to develop guidelines for determining a prisoner's suitability for parole. *See Geraghty v. U.S. Parole Comm'n,* 719 F.2d 1199, 1212-13 (3d Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984). Similarly, we have held that the Parole

---

[7]*Id.* at 558.

[8]*See supra* Part II.C.

Commission guidelines do not unconstitutionally impinge the judiciary's sentencing function. *Page v. U.S. Parole Comm'n,* 651 F.2d 1083, 1085 (5th Cir. Unit A July 1981). The basis for these decisions is that, to delegate a legislative function, "Congress need only lay down an "intelligible principle' to which the agency must conform[,]" and "[t]he standards Congress has given to the Commission amply satisfy this requirement." *Geraghty,* 719 F.2d at 1213. Relying upon our holding in *Page* and the Third Circuit's holding in *Geraghty,* we conclude that Simpson's separation of powers challenge to the Commission's discretion to establish suitability for parole is without merit.

### III

For the foregoing reasons, we conclude that Simpson has failed to raise a meritorious claim and, therefore, that no rational trier of fact, based upon the record as a whole, could find in his favor. *See* FED.R.CIV.P. 56; *Amoco Production Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 147-48 (5th Cir.1992). Accordingly, we AFFIRM the district court's grant of summary judgment in favor of respondents.