UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

 

No. 96-2358

 RAFAEL MORENO-MORALES,

 Petitioner, Appellant,

 v.

 UNITED STATES PAROLE COMMISSION,

 Respondent, Appellee.
 

 ERRATA SHEET ERRATA SHEET

 The opinion of this court issued on January 20,
1998, is corrected as follows:

 On the cover page, the name of the district court
judge whose decision we review is changed from "Fusto" to
"Fuste".
[ N O T F O R P U B L I C A T I O N ]

 United States Court of Appeals United States Court of Appeals
 For the First Circuit For the First Circuit
 

No. 96-2358

 RAFAEL MORENO-MORALES,

 Petitioner, Appellant,

 v.

 UNITED STATES PAROLE COMMISSION,

 Respondent, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jose A. Fuste, U.S. District Judge] 

 

 Before

 Torruella, Chief Judge, 
 Campbell, Senior Circuit Judge, 
 and Lynch, Circuit Judge. 

 

 Irma R. Valldejuli for appellant. 

 Isabel Munoz Acosta, Assistant U.S. Attorney, with whom 
Guillermo Gil, United States Attorney, was on brief for 
appellee.

 

 January 20, 1998
 

 -2- 2

 Per Curiam. Rafael Moreno-Morales is serving a 

thirty year sentence for convictions of obstructing justice,

giving false testimony, suborning perjury, and committing

perjury. After being denied parole, he sought a writ of

habeas corpus, arguing that the Parole Commission violated

its own rules and that its decision was arbitrary and

capricious. The district court denied relief. We affirm. 

 I I

 The infamous Cerro Maravilla incident underlying

the criminal conviction of Moreno-Morales, a police officer,

has been well described in other opinions. See, e.g., United 

States v. Reveron Martinez, 836 F.2d 684 (1st Cir. 1988); 

United States v. Moreno-Morales, 815 F.2d 725 (1st Cir. 

1987); In re Grand Jury Investigations of the Cerro Maravilla 

Events, 783 F.2d 20 (1st Cir. 1986). For present purposes, 

we sketch the facts pertinent to the decision of the Parole

Commission.

 On July 25, 1978, members of the "Movimiento

Revolucionario Armado," a radical Puerto Rican pro-

independence movement, attempted to destroy a television

tower at Cerro Maravilla. The members included Arnaldo Dar o

Rosado, Carlos Soto Arriv , and a third individual who was a

police informant. The Puerto Rico Police learned of this

planned sabotage through the informant and ambushed the

 -2- 2

group. Appellant Moreno-Morales was among the police

officers at the scene. 

 After a shoot-out, Dar o Rosado and Soto Arriv 

surrendered and were taken into custody. In custody, while

handcuffed, Dar o Rosado and Soto Arriv were brutalized by

the police. One police officer killed Dar o Rosado with a

shotgun blast to the chest. A second police officer shot and

wounded Soto Arriv with a pistol. Moreno-Morales took the

pistol and shot Soto Arriv again, killing him.

 The police concealed their deeds by rearranging the

scene to make it seem the two men had not been taken into

custody. They fabricated a story that Dar o Rosado and Soto

Arriv had been killed in a shoot-out while resisting arrest.

Moreno-Morales and the other officers told this story to

local district attorneys investigating the shootings. When

the victims' survivors brought a civil rights action against

the Commonwealth of Puerto Rico in federal court, the

officers told the same story in deposition testimony. They

also told this story to a federal grand jury investigating

the event. 

 In February 1984, after prolonged investigation, a

federal grand jury returned indictments against Moreno-

Morales and he was convicted after trial of obstructing

justice, giving false testimony, suborning perjury, and

committing perjury.

 -3- 3

 In January 1985, Moreno-Morales was charged under

Puerto Rico law with murder for the deaths of Dar o Rosado

and Soto Arriv . Moreno-Morales was convicted of second-

degree murder as to the death of Soto Arriv and sentenced to

twenty-two to thirty years in jail. That sentence is

consecutive to his federal sentence.

 II II

 Moreno-Morales was eligible for parole

consideration on March 27, 1995. Under 18 U.S.C. 4208(a),

an initial parole hearing is to be held, when feasible, not

later than thirty days prior to the parole eligibility date.

The Parole Commission delayed the hearing beyond the thirty

days until it obtained additional information. By letter

dated March 8, 1995, the Parole Commission asked the Chief

Probation Officer for the District of Puerto Rico for an

explanation of Moreno-Morales's involvement in the Cerro

Maravilla killings. The letter explained that the Commission

needed "further information . . . to conduct the hearing in

conformity with the Commission procedures." The Chief

Probation Officer referred the matter to attorneys at the

Criminal Section of the Civil Rights Division of the United

States Department of Justice. On June 30, 1995, an attorney

from the Justice Department wrote a letter to the Parole

Commission explaining Moreno-Morales's role in the killings.

Moreno-Morales was not copied on the letter.

 -4- 4

 The Parole Commission scheduled Moreno-Morales's

hearing for July 20, 1995. On July 17, 1995, the Commission

sent a copy of the Justice Department letter to the Bureau of

Prisons with instructions to disclose the letter to Moreno-

Morales but not to furnish a copy of it to him. The Bureau

of Prisons did this on July 18, 1995. 

 On July 20, the hearing occurred before one hearing

examiner, as permitted by Commission regulations. See 28 

C.F.R. 2.13(a). At the hearing, Moreno-Morales admitted

shooting Soto Arriv , saying he did so when he "lost control"

after Soto Arriv shot at him. Moreno-Morales also argued

that some witnesses had been paid by the government to alter

their testimony. The hearing examiner instructed that a copy

of the Justice Department letter should be provided to

Moreno-Morales.

 On August 9, 1995, the Commission issued its Notice

of Action denying parole. The Notice stated:

 Your offense behavior has been rated as a
 Category Eight severity because it
 involved murder. Your salient factor
 score (SFS-81) is 10. You have been in
 federal confinement as a result of your
 behavior for a total of 124 months.
 Guidelines established by the Commission
 indicate a range of 100+ months to be
 served before release for cases with good
 institutional adjustment and program
 achievement. After review of all
 relevant factors and information
 presented a decision more than 48 months
 above the minimum guidelines appears
 warranted because your offense behavior
 involved the following aggravating

 -5- 5

 factors: An unarmed person detained by
 police and handcuffed was shot and
 killed.

Although the Notice was issued on August 9, 1995, the Bureau

of Prisons did not deliver the Notice to Moreno-Morales until

December 8, 1995. 

 On December 15, 1995, Moreno-Morales appealed the

decision to the National Appeals Board, arguing that the

Commission did not follow correct procedures in deciding his

case and that the Commission should have granted him

leniency. On March 13, 1996, the Board affirmed the hearing

examiner's decision. The Board rejected Moreno-Morales's

arguments:

 You were not prejudiced by the fact that
 your initial hearing was held four months
 after your completion of your minimum
 term. The Commission's current
 regulations state that "an initial
 hearing shall be conducted by a single
 hearing examiner unless the Regional
 Commissioner orders that the hearing be
 conducted by a panel of two examiners."
 28 C.F.R. 2.13(A). Therefore, there
 was no error in the fact that only one
 examiner conducted your hearing. Your
 notice of action was issued on August 9,
 1995, within 21 days after your July 20,
 1995 hearing, as required by regulation.
 The fact that the Bureau of Prisons may
 not have immediately delivered the NOA to
 you is not the fault of the Commission.

The Board also rejected Moreno-Morales's claim that the

Commission did not disclose the Justice Department letter

prior to the hearing by pointing out that, in fact, he had

been shown the letter. Finally, the Board rejected Moreno-

 -6- 6

Morales's claim that he should have been granted leniency

because a co-defendant had been granted leniency. The Board

stated there were significant mitigating factors in that

case, and leniency granted in one case does not require

leniency in another.

 On May 16, 1996, Moreno-Morales filed a habeas

corpus petition, again arguing that the Parole Commission had

acted capriciously and that it had failed to follow its

internal regulations. The district court denied the petition

without a hearing. Moreno-Morales appeals.

 III III

 While there is some debate among the courts of

appeal as to the scope and standard of review of different

types of Parole Commission decisions,1 for present purposes

we will assume this decision is reviewable and test it for

whether it is irrational, arbitrary or capricious. The

decision is plainly none of these things.

 Under the Parole Commission's guidelines, parole

determinations are based upon two factors: offense category

  

1. For cases holding decisions of the Parole Commission are
not reviewable for abuse of discretion, see, e.g., Jones v. 
United States Bureau of Prisons, 903 F.2d 1178, 1183 (8th 
Cir. 1990); Wallace v. Christensen, 802 F.2d 1539, 1553 (9th 
Cir. 1986) (en banc); Farkas v. United States, 744 F.2d 37, 
38-39 (6th Cir. 1984); Garafola v. Wilkinson, 721 F.2d 420, 
423-24 (3d Cir. 1983); Garcia v. Neagle, 660 F.2d 983, 988-89 
(4th Cir. 1981). For cases holding decisions of Parole
Commission are subject to deferential review, see, e.g., 
Hanahan v. Luther, 693 F.2d 629, 632 (7th Cir. 1982); Simpson 
v. Ortiz, 995 F.2d 606, 608 (5th Cir. 1993). 

 -7- 7

and salient factor score. See 28 C.F.R. 2.20. The offense 

category rates the severity of the inmate's offense. The

salient factor score rates the inmate's parole prognosis

based on such factors as criminal record and age. See id.  

As to the second prong, the Commission assigned to Moreno-

Morales a salient factor score of ten, the most favorable

rating. 

 There are eight offense categories, and the parole

guidelines provide upper and lower confinement limits for

categories one through seven, from which the Commission may

depart for good cause. See 18 U.S.C. 4206(c). There is no 

upper limit for category eight offenses because of the

"extreme variability of the cases within this category." 28

C.F.R. 2.20 n.1. If the Commission decides to exceed the

lower limit of category eight parole eligibility by more than

forty-eight months, it must "specify the pertinent case

factors upon which it relied in reaching its decision." Id. 

 The base offense category for perjury is three,

except when the perjury concerns a criminal offense, in which

case the offense category is two categories below the

underlying offense. Because Moreno-Morales committed perjury

while attempting to conceal a murder, an offense category

eight crime, his offense category would ordinarily be six.

See 28 C.F.R. 2.20 ch.6. The Parole Commission, however, 

 -8- 8

elevated Moreno-Morales's offense category to eight because

of the fact he had committed murder. The Parole Commission

may take into account any substantial information available

to it when assessing the offense category, see 28 C.F.R.  

2.19(c), and this decision was entirely rational in light of

the conviction, the Justice Department letter, and Moreno-

Morales's own admissions. 

 Under the guidelines, the Commission was obligated

to state the reasons for its decision to deny parole. See 28 

C.F.R. 2.20 n.1. The Commission did this, stating the

decision was premised upon the aggravating factor that "an

unarmed person detained by police and handcuffed was shot and

killed." That is enough.

 IV IV

 Moreno-Morales's arguments that the Commission

failed to follow its own rules are also without merit.

Moreno-Morales argues that the Parole Commission denied him

"reasonable access" to the Justice Department letter and a

meaningful opportunity to respond to it. Moreno-Morales saw

the letter two days before his hearing, a fact which he

admits, and he declined the hearing examiner's offer to

continue the hearing until a later date -- an offer made

specifically to give Moreno-Morales the opportunity to

consider his response. Moreno-Morales complains he could not

fully explain his version of events because his translator

 -9- 9

was not fluent in Spanish, but does not explain how he was

prejudiced on this account. See Sacasas v. Rison, 755 F.2d 

1533, 1535 (11th Cir. 1985) (petitioner must demonstrate he

was prejudiced by Parole Commission's acts to be entitled to

habeas relief). In any event, the hearing examiner plainly

understood at least the gist of Moreno-Morales's assertions,

as he refers to them in his Initial Hearing Summary. 

 Moreno-Morales also argues that the Parole

Commission failed to state the reasons for its denial with

particularity as required by 18 U.S.C. 4206(b). This is

plainly incorrect, as the Notice of Action specifically

explained that parole was denied because "an armed person

detained by police and handcuffed was shot and killed."

 We affirm the decision of the district court.2

  

2. At oral argument, the government informed us that the
Parole Commission conducted another hearing regarding Moreno-
Morales in October 1997 and has yet to render its decision.
Nothing in this decision should be construed to prevent the
Parole Commission from reaching its own decision in that
matter.

 -10- 10