USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 96-2358 RAFAEL MORENO-MORALES, Petitioner, Appellant, v. UNITED STATES PAROLE COMMISSION, Respondent, Appellee. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this court issued on January 20, 1998, is corrected as follows: On the cover page, the name of the district court judge whose decision we review is changed from "Fusto" to "Fuste". [ N O T F O R P U B L I C A T I O N ] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 96-2358 RAFAEL MORENO-MORALES, Petitioner, Appellant, v. UNITED STATES PAROLE COMMISSION, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose A. Fuste, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Irma R. Valldejuli for appellant. __________________ Isabel Munoz Acosta, Assistant U.S. Attorney, with whom ___________________ Guillermo Gil, United States Attorney, was on brief for ______________ appellee. ____________________ January 20, 1998 ____________________ -2- 2 Per Curiam. Rafael Moreno-Morales is serving a __________ thirty year sentence for convictions of obstructing justice, giving false testimony, suborning perjury, and committing perjury. After being denied parole, he sought a writ of habeas corpus, arguing that the Parole Commission violated its own rules and that its decision was arbitrary and capricious. The district court denied relief. We affirm.  I I The infamous Cerro Maravilla incident underlying the criminal conviction of Moreno-Morales, a police officer, has been well described in other opinions. See, e.g., United _________ ______ States v. Reveron Martinez, 836 F.2d 684 (1st Cir. 1988); ______ _________________ United States v. Moreno-Morales, 815 F.2d 725 (1st Cir. ______________ ______________ 1987); In re Grand Jury Investigations of the Cerro Maravilla ______________________________________________________ Events, 783 F.2d 20 (1st Cir. 1986). For present purposes, ______ we sketch the facts pertinent to the decision of the Parole Commission. On July 25, 1978, members of the "Movimiento Revolucionario Armado," a radical Puerto Rican pro- independence movement, attempted to destroy a television tower at Cerro Maravilla. The members included Arnaldo Dar o Rosado, Carlos Soto Arriv , and a third individual who was a police informant. The Puerto Rico Police learned of this planned sabotage through the informant and ambushed the -2- 2 group. Appellant Moreno-Morales was among the police officers at the scene.  After a shoot-out, Dar o Rosado and Soto Arriv  surrendered and were taken into custody. In custody, while handcuffed, Dar o Rosado and Soto Arriv were brutalized by the police. One police officer killed Dar o Rosado with a shotgun blast to the chest. A second police officer shot and wounded Soto Arriv with a pistol. Moreno-Morales took the pistol and shot Soto Arriv again, killing him. The police concealed their deeds by rearranging the scene to make it seem the two men had not been taken into custody. They fabricated a story that Dar o Rosado and Soto Arriv had been killed in a shoot-out while resisting arrest. Moreno-Morales and the other officers told this story to local district attorneys investigating the shootings. When the victims' survivors brought a civil rights action against the Commonwealth of Puerto Rico in federal court, the officers told the same story in deposition testimony. They also told this story to a federal grand jury investigating the event.  In February 1984, after prolonged investigation, a federal grand jury returned indictments against Moreno- Morales and he was convicted after trial of obstructing justice, giving false testimony, suborning perjury, and committing perjury. -3- 3 In January 1985, Moreno-Morales was charged under Puerto Rico law with murder for the deaths of Dar o Rosado and Soto Arriv . Moreno-Morales was convicted of second- degree murder as to the death of Soto Arriv and sentenced to twenty-two to thirty years in jail. That sentence is consecutive to his federal sentence. II II Moreno-Morales was eligible for parole consideration on March 27, 1995. Under 18 U.S.C. 4208(a), an initial parole hearing is to be held, when feasible, not later than thirty days prior to the parole eligibility date. The Parole Commission delayed the hearing beyond the thirty days until it obtained additional information. By letter dated March 8, 1995, the Parole Commission asked the Chief Probation Officer for the District of Puerto Rico for an explanation of Moreno-Morales's involvement in the Cerro Maravilla killings. The letter explained that the Commission needed "further information . . . to conduct the hearing in conformity with the Commission procedures." The Chief Probation Officer referred the matter to attorneys at the Criminal Section of the Civil Rights Division of the United States Department of Justice. On June 30, 1995, an attorney from the Justice Department wrote a letter to the Parole Commission explaining Moreno-Morales's role in the killings. Moreno-Morales was not copied on the letter. -4- 4 The Parole Commission scheduled Moreno-Morales's hearing for July 20, 1995. On July 17, 1995, the Commission sent a copy of the Justice Department letter to the Bureau of Prisons with instructions to disclose the letter to Moreno- Morales but not to furnish a copy of it to him. The Bureau of Prisons did this on July 18, 1995.  On July 20, the hearing occurred before one hearing examiner, as permitted by Commission regulations. See 28 ___ C.F.R. 2.13(a). At the hearing, Moreno-Morales admitted shooting Soto Arriv , saying he did so when he "lost control" after Soto Arriv shot at him. Moreno-Morales also argued that some witnesses had been paid by the government to alter their testimony. The hearing examiner instructed that a copy of the Justice Department letter should be provided to Moreno-Morales. On August 9, 1995, the Commission issued its Notice of Action denying parole. The Notice stated: Your offense behavior has been rated as a Category Eight severity because it involved murder. Your salient factor score (SFS-81) is 10. You have been in federal confinement as a result of your behavior for a total of 124 months. Guidelines established by the Commission indicate a range of 100+ months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented a decision more than 48 months above the minimum guidelines appears warranted because your offense behavior involved the following aggravating -5- 5 factors: An unarmed person detained by police and handcuffed was shot and killed. Although the Notice was issued on August 9, 1995, the Bureau of Prisons did not deliver the Notice to Moreno-Morales until December 8, 1995.  On December 15, 1995, Moreno-Morales appealed the decision to the National Appeals Board, arguing that the Commission did not follow correct procedures in deciding his case and that the Commission should have granted him leniency. On March 13, 1996, the Board affirmed the hearing examiner's decision. The Board rejected Moreno-Morales's arguments: You were not prejudiced by the fact that your initial hearing was held four months after your completion of your minimum term. The Commission's current regulations state that "an initial hearing shall be conducted by a single hearing examiner unless the Regional Commissioner orders that the hearing be conducted by a panel of two examiners." 28 C.F.R. 2.13(A). Therefore, there was no error in the fact that only one examiner conducted your hearing. Your notice of action was issued on August 9, 1995, within 21 days after your July 20, 1995 hearing, as required by regulation. The fact that the Bureau of Prisons may not have immediately delivered the NOA to you is not the fault of the Commission. The Board also rejected Moreno-Morales's claim that the Commission did not disclose the Justice Department letter prior to the hearing by pointing out that, in fact, he had been shown the letter. Finally, the Board rejected Moreno- -6- 6 Morales's claim that he should have been granted leniency because a co-defendant had been granted leniency. The Board stated there were significant mitigating factors in that case, and leniency granted in one case does not require leniency in another. On May 16, 1996, Moreno-Morales filed a habeas corpus petition, again arguing that the Parole Commission had acted capriciously and that it had failed to follow its internal regulations. The district court denied the petition without a hearing. Moreno-Morales appeals. III III While there is some debate among the courts of appeal as to the scope and standard of review of different types of Parole Commission decisions,1 for present purposes we will assume this decision is reviewable and test it for whether it is irrational, arbitrary or capricious. The decision is plainly none of these things. Under the Parole Commission's guidelines, parole determinations are based upon two factors: offense category  ____________________ 1. For cases holding decisions of the Parole Commission are not reviewable for abuse of discretion, see, e.g., Jones v. _________ _____ United States Bureau of Prisons, 903 F.2d 1178, 1183 (8th _________________________________ Cir. 1990); Wallace v. Christensen, 802 F.2d 1539, 1553 (9th _______ ___________ Cir. 1986) (en banc); Farkas v. United States, 744 F.2d 37, ______ _____________ 38-39 (6th Cir. 1984); Garafola v. Wilkinson, 721 F.2d 420, ________ _________ 423-24 (3d Cir. 1983); Garcia v. Neagle, 660 F.2d 983, 988-89 ______ ______ (4th Cir. 1981). For cases holding decisions of Parole Commission are subject to deferential review, see, e.g., _________ Hanahan v. Luther, 693 F.2d 629, 632 (7th Cir. 1982); Simpson _______ ______ _______ v. Ortiz, 995 F.2d 606, 608 (5th Cir. 1993). _____ -7- 7 and salient factor score. See 28 C.F.R. 2.20. The offense ___ category rates the severity of the inmate's offense. The salient factor score rates the inmate's parole prognosis based on such factors as criminal record and age. See id.  ___ ___ As to the second prong, the Commission assigned to Moreno- Morales a salient factor score of ten, the most favorable rating.  There are eight offense categories, and the parole guidelines provide upper and lower confinement limits for categories one through seven, from which the Commission may depart for good cause. See 18 U.S.C. 4206(c). There is no ___ upper limit for category eight offenses because of the "extreme variability of the cases within this category." 28 C.F.R. 2.20 n.1. If the Commission decides to exceed the lower limit of category eight parole eligibility by more than forty-eight months, it must "specify the pertinent case factors upon which it relied in reaching its decision." Id. ___ The base offense category for perjury is three, except when the perjury concerns a criminal offense, in which case the offense category is two categories below the underlying offense. Because Moreno-Morales committed perjury while attempting to conceal a murder, an offense category eight crime, his offense category would ordinarily be six. See 28 C.F.R. 2.20 ch.6. The Parole Commission, however, ___ -8- 8 elevated Moreno-Morales's offense category to eight because of the fact he had committed murder. The Parole Commission may take into account any substantial information available to it when assessing the offense category, see 28 C.F.R.  ___ 2.19(c), and this decision was entirely rational in light of the conviction, the Justice Department letter, and Moreno- Morales's own admissions.  Under the guidelines, the Commission was obligated to state the reasons for its decision to deny parole. See 28 ___ C.F.R. 2.20 n.1. The Commission did this, stating the decision was premised upon the aggravating factor that "an unarmed person detained by police and handcuffed was shot and killed." That is enough. IV IV Moreno-Morales's arguments that the Commission failed to follow its own rules are also without merit. Moreno-Morales argues that the Parole Commission denied him "reasonable access" to the Justice Department letter and a meaningful opportunity to respond to it. Moreno-Morales saw the letter two days before his hearing, a fact which he admits, and he declined the hearing examiner's offer to continue the hearing until a later date -- an offer made specifically to give Moreno-Morales the opportunity to consider his response. Moreno-Morales complains he could not fully explain his version of events because his translator -9- 9 was not fluent in Spanish, but does not explain how he was prejudiced on this account. See Sacasas v. Rison, 755 F.2d ___ _______ _____ 1533, 1535 (11th Cir. 1985) (petitioner must demonstrate he was prejudiced by Parole Commission's acts to be entitled to habeas relief). In any event, the hearing examiner plainly understood at least the gist of Moreno-Morales's assertions, as he refers to them in his Initial Hearing Summary.  Moreno-Morales also argues that the Parole Commission failed to state the reasons for its denial with particularity as required by 18 U.S.C. 4206(b). This is plainly incorrect, as the Notice of Action specifically explained that parole was denied because "an armed person detained by police and handcuffed was shot and killed." We affirm the decision of the district court.2  ____________________ 2. At oral argument, the government informed us that the Parole Commission conducted another hearing regarding Moreno- Morales in October 1997 and has yet to render its decision. Nothing in this decision should be construed to prevent the Parole Commission from reaching its own decision in that matter. -10- 10