IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-50936
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GUSTAVO LOPEZ-BENITEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(DR-98-CR-101-1)
_____

October 15, 1999

Before KING, Chief Judge, and GARWOOD and STEWART, Circuit
Judges,

KING, Chief Judge:[*]

Defendant-Appellant Gustavo Lopez-Benitez (Lopez) appeals

his conviction for possession with intent to distribute marijuana

in violation of 21 U.S.C. § 841(a)(1), arguing that the district

court erred in (1) denying his motion to suppress, concluding

instead that Border Patrol officers had reasonable suspicion to

stop the vehicle he was driving; (2) denying his motion for

mistrial despite prosecutor questioning regarding Lopez's post-

arrest silence; and (3) denying his request for jury instructions

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

regarding the knowledge element of his charged crime. We find that the Border Patrol officers had reasonable suspicion to stop the vehicle Lopez was driving, but we reverse and remand for a new trial because we also conclude that prosecutorial misconduct prejudiced Lopez's rights to a fair trial. As a result, we do not address the jury instruction issue.

I.

FACTS & PROCEDURAL HISTORY

Around 11:30 p.m. on February 23, 1998, Border Patrol officers Troy Meredith and Ignacio Guerra, in a marked Border Patrol Bronco, were traveling west on Highway 277 between Carrizo Springs and Eagle Pass. They were approximately 15 miles from the U.S. border when they saw two eastbound sedans traveling one to two car lengths apart from one another. Officer Meredith testified that Highway 277 was a route commonly used by smugglers, and that he had encountered drug- and alien-smuggling activity on Highway 277 during his three years of experience monitoring the road. He affirmed that the area in which the two sedans were spotted was ranch land, and that sedans were not ranch traffic. He also testified that shift changes occurred between 11:00 and midnight, and that the checkpoint on Highway 277 had closed at 8:00 p.m. At the time he and Officer Guerra spotted the two vehicles, the checkpoint on Highway 57, another road leading away from the border, was open.

The officers turned around and followed the rear vehicle, a Chevrolet Cavalier. A license-plate check of that vehicle showed it was registered in Austin, Texas. The officers then passed the Cavalier and pulled in between the two cars. Officer Meredith testified that their pulling in between the two cars caused the rear vehicle to slow down and drop back by as much as half a mile. A license-plate check of the car in front of them, a Ford Escort, revealed it was also registered in Austin. Highway 57, not Highway 277, is the most direct route to Austin.

The officers stopped the Escort to check the immigration status of the vehicle's occupants. After determining the two occupants were in the U.S. legally, the officers left to catch up to the Cavalier, which had since passed them, to conduct an immigration check. The driver of the Cavalier was Lopez, who, in response to Officer Meredith's query regarding his immigration status, said he was in the country illegally. The officers immediately put Lopez under arrest, escorted him to their patrol vehicle, secured him in the back seat, and read him his rights.

While Lopez was exiting the Cavalier, the officers detected a smell, which they identified as the smell of marijuana, coming from the vehicle. Although Lopez orally consented to a search of the car, the officers nonetheless called for a K-9 unit in order to have a dog inspect the vehicle. The dog alerted to the trunk of the car. The trunk was opened with a key, and the officers found sugar sacks painted black containing 51.8 kilos of marijuana.

A suppression hearing was held on July 6, 1998. The court cited a number of factors as supporting the reasonableness of the officers' suspicions that the vehicles' occupants were engaged in criminal activity, including officer experience, the proximity to the border, the nature of the road on which the stop was made, the hour, that the vehicles were spotted between shift changes, that both vehicles were registered in Austin and appeared to be traveling in tandem, and that the vehicles were traveling on a road on which the checkpoint was closed, rather than on the road that was the more direct route to Austin but on which the checkpoint was open. As a result, trial judge denied Lopez's motion to suppress the marijuana.

The trial followed. During the prosecutor's cross-examination of Lopez, questions were posed regarding whether Lopez had been read his rights upon arrest, whether he had asked for a lawyer, and whether he had had occasion to tell his story to the Border Patrol officers. Objection to each of these questions was sustained. Lopez's counsel moved for mistrial on the ground that the prosecutor had violated Lopez's constitutional rights to counsel and to remain silent. This motion was denied.

The jury found Lopez guilty. A motion for a new trial was denied. Lopez was sentenced to 37 months' imprisonment, three years' supervised release, and a special assessment of $100. He timely appeals.

4

## II.

### THE VEHICLE STOP

In reviewing a denial of a motion to suppress, we accept the district court's findings of fact unless clearly erroneous, and review its conclusion as to the constitutionality of the law enforcement action de novo. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Chavez-Villareal, 3 F.3d 124, 126 (5th Cir. 1993). The evidence presented at the pre-trial suppression hearing must be viewed in the light most favorable to the prevailing party, here the government. See United States v. Villalobos, 161 F.3d 285, 288 (5th Cir. 1998).

Lopez maintains that the district court erred in concluding reasonable suspicion existed to justify pulling over the vehicle he was driving, and therefore it erred in denying his motion to suppress the marijuana discovered in the trunk. He first points to the absence of evidence allowing officers to be reasonably certain that the vehicle had recently crossed the border, arguing that under United States v. Melendez-Gonzalez, 727 F.2d 407, 411 (5th Cir. 1984), the lack of such evidence required the court to assess the remaining factors with care. He argues that those other factors are insufficient to justify a stop.

Under United States v. Brignoni-Ponce, 422 U.S. 873 (1975), an officer on roving border patrol may stop and briefly investigate a vehicle and its occupants if the officer is "aware of specific articulable facts, together with [the] rational inferences from those facts, that reasonably warrant suspicion

5

that the vehicles contain aliens who may be illegally in the country." 422 U.S. at 884. Each case turns on the totality of the circumstances. See id. at 885 n.10; United States v. Cortez, 449 U.S. 411, 421-22 (1981). Based on an assessment of those circumstances, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417-18. Factors that may be taken into account include: (1) the characteristics of the area in which the officers encounter the vehicle; (2) the detaining officers' previous experience with criminal activity; (3) the area's proximity to the border; (4) the usual traffic patterns on the road in question; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the stopped vehicle; (7) the behavior of the vehicle's driver; and (8) the number, appearance, and behavior of the passengers. See Brignoni-Ponce, 422 U.S. at 884-85; United States v. Nichols, 142 F.3d 857, 865 (5th Cir.), cert. denied, 119 S. Ct. 621 (1998) (quoting United States v. Inocenio, 40 F.3d 716, 722 (5th Cir. 1994)).

Overall, the circumstances in this case suggest that the district court concluded correctly that officers' suspicions were reasonable. Lopez's sedan was spotted in close proximity to another sedan approximately fifteen miles from the border – not a "substantial distance," Inocencio, 40 F.3d at 722 n.7, by any measure – in an area that was primarily ranch land. Cf. Villalobos, 161 F.3d at 290 (spotting two cars in close proximity

6

on a sparsely traveled road does not itself justify a stop, but may raise suspicions). The sedans were spotted on one of the two main roads leading away from the border. That road was a known smuggling route. Cf. id., 161 F.3d at 289 ("[T]he possibility that Villalobos could have been an innocent traveler from Presidio or Shafter does not negate the fact that the area through which he was driving was both very close to the border and very heavily traversed by border traffic."); Nichols, 142 F.3d at 870 (stating that road's reputation as smuggling route adds to reasonableness of suspicion). The two sedans were spotted at 11:30 p.m. when there was little to no other traffic on the road. Cf. United States v. Lujan-Miranda, 535 F.2d 327, 329 (5th Cir. 1976) (traveling at an unusual time of day may not itself justify a stop, but is a permissible consideration). Lopez's reaction to the officers' pulling in between the two sedans could legitimately raise suspicions. Cf. Villalobos, 161 F.3d at 291 ("[N]oticeable deceleration in the presence of a patrol car can contribute to reasonable suspicion . . . . Such deceleration may be additionally suspicious when the car was not speeding to begin with . . . ."). When these observations were combined with the fact that two vehicles registered in Austin were traveling one to two car lengths apart on a road that did not lead directly to that city at a time when the checkpoint was closed on the road taken but open on the more direct route,[1] Officer Meredith, in

---

[1]  In Lopez-Valdez, 178 F.3d at 287, this Court found that presence on FM2644 at 8:30 a.m. was insufficient to infer that the driver was avoiding a checkpoint, given the government

7

light of his three years' experience, was reasonably suspicious that the vehicles' occupants were engaged in criminal activity.

### III.

### PROSECUTOR QUESTIONING DURING CROSS-EXAMINATION

The next issue before us is whether prosecutor questions posed during cross-examination prejudiced Lopez's rights to a fair trial, rendering the district court's denial of Lopez's mistrial motion in error. We review a district court's denial of motions for mistrial for abuse of discretion. United States v. Hernandez-Guevara, 162 F.3d 863, 869 (5th Cir. 1998), cert. denied, 119 S. Ct. 1375 (1999).

The questions at issue came at the end of the prosecutor's cross-examination:

```
Q:   Were you read your rights when you were arrested?
     Defense Counsel:   Objection, Your Honor, completely
                        irrelevant.
     The Court:         Sustained.
Q:   Were you arrested?
A:   By immigration, yes.
Q:   And you asked to speak to a lawyer right away, didn't
     you?
     Defense Counsel:   Objection, Your Honor, violates –
     The Court:         Sustained.
Q:   Did you have occasion to tell the border patrol what
     you told us in court today?
     Defense Counsel:   Objection, Your Honor. May we
                        approach, please?
     The Court:         No. Objection sustained.
```

---

introduced no evidence that it was unusual to see traffic on that road at that time. Here, the vehicles' Austin registration contributed to the inference that a checkpoint was being avoided. Officer Meredith also testified that there "wasn't any other traffic on the highway that time of night."

After defense counsel moved for a mistrial, which the court denied, the prosecutor stated he had no further questions.

Lopez argues that these questions were in clear violation of the principles laid out in Doyle v. Ohio, 426 U.S. 610 (1976), in that they represented the use of Lopez's post-arrest, post-Miranda[1] silence for impeachment purposes. That objections were sustained before Lopez could respond is of no moment because the mere posing of these questions seriously undermined Lopez's defense. As a result, the prosecutor's behavior did not constitute harmless error.

The Government contends first that the questions did not violate Doyle. They were intended to show Lopez was not unsophisticated, as his testimony suggested, or were ambiguous in that they did not clearly regard Lopez's post-arrest, post-Miranda silence. The Government further argues that even if the questions violated Doyle, mere posing of them was harmless error.

In an apparent attempt to ensure the prosecutor adhered to the Doyle rule, defense counsel filed a motion in limine, which requested that the court order the prosecutor "to refrain from commenting before the jury on, alluding before the jury to, or eliciting testimony from any of the witnesses regarding Defendant's post-arrest silence or his failure to make a post-arrest sworn statement." Granting this motion, the court allowed the prosecutor to raise only Lopez's statement that he was in the country illegally. In light of this order, rather than assessing

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

the prosecutor's behavior within a <u>Doyle</u> framework, we analyze the challenged questions in terms of the closely analogous claim of prosecutorial misconduct. <u>Cf.</u> <u>Greer v. Miller</u>, 483 U.S. 756 (1987) (considering whether defendant was denied a fair trial due to prosecutorial misconduct after determining that no <u>Doyle</u> violation had occurred).[2]

The Supreme Court has made clear that the "touchstone of due process analysis" in cases involving prosecutorial misconduct is the fairness of the trial. <u>See</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). Accordingly, our "task in reviewing a claim of prosecutorial misconduct is to decide whether the misconduct casts serious doubt upon the correctness of the jury's verdict." <u>United States v. Carter</u>, 953 F.2d 1449, 1457 (5th Cir.), <u>cert. denied sub nom.</u>, <u>Hammack v. United States</u>, 504 U.S. 990 (1992). Our inquiry proceeds in two steps. First, we must decide whether the prosecutor's questions were improper. <u>See</u> <u>United States v. Gallardo-Trapero</u>, 185 F.3d 307, 320 (5th Cir. 1999); <u>United States v. Munoz</u>, 150 F.3d 401, 414 (5th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 887 (1999). If the questions are found to be improper, we next assess whether they prejudiced Lopez's substantive rights. <u>See</u> <u>Gallardo-Trapero</u>, 185 F.3d at 320; <u>Munoz</u>, 150 F.3d at

---

[2] In citing <u>Greer</u>, we do not intend to suggest that we have determined that the prosecutor's questioning of Lopez constituted, or did not constitute, a <u>Doyle</u> violation. We only note, as did the Supreme Court in <u>Greer</u>, 483 U.S. at 765, that prosecutorial questioning regarding a defendant's post-arrest silence may operate to deprive that defendant of a fair trial. Because Lopez argues that the prosecutor's questions prejudiced his rights to a fair trial, we consider his claim to include a claim of prosecutorial misconduct.

415. Reversal is appropriate only where the questions "taken as a whole in the context of the entire case" do not constitute harmless error. Id. (quoting United States v. Nixon, 777 F.2d 958, 972 (5th Cir. 1985)). In assessing whether the questions were harmless, we consider "(1) the magnitude of the [questions'] prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." United States v. Tomblin, 46 F.3d 1369, 1389 (5th Cir. 1995) (quoting United States v. Simpson, 901 F.2d 1223, 1227 (5th Cir. 1990)).

We find that each of the prosecutor's questions at issue here was improper. The Government conceded at oral argument that the question of whether Lopez asked to see his lawyer right away was improper. The questions posed also clearly violated the court's in limine order in that they alluded to, and attempted to elicit information regarding, Lopez's post-arrest silence. We do not find persuasive the Government's argument that the prosecutor's question as to whether Lopez had had occasion to tell his story to the Border Patrol officers was ambiguous as to the time to which it referred. Officer testimony had already established that upon declaring he was in the country illegally, Lopez was immediately arrested, put into the officers' vehicle, and read his rights. Thus, the only time to which this question could conceivably refer was the post-arrest period during which Lopez was still in the company of the Border Patrol. Cf. United States v. Rodriquez, 43 F.3d 117, 123 (5th Cir.), cert. denied,

11

515 U.S. 1108 (1995) (noting, in concluding harmless error, that prosecutor's question made no reference to the defendant's constitutionally protected post-arrest silence and that the record showed no <u>Miranda</u> warnings).

We do not find the evidence against Lopez to be overwhelming. The case turned entirely on the knowledge element of the charged crime. The Government's position was that Lopez's story was implausible, and that he either knew he was transporting marijuana or was deliberately ignorant of the facts, given, for example, the odor of marijuana in the car. No evidence was presented that Lopez opened the trunk. Officers testified they could identify the smell of marijuana only because of their training. Lopez's sole defense was that he had no knowledge. He had merely agreed to drive a car for another person in return for assistance across the river and to Austin. Three hours after his arrest, when approached by drug enforcement agents and asked about the drugs, he responded, "What marijuana?"

The magnitude of the prejudicial effect of the prosecutor's questions "is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect." <u>United States v. Fields</u>, 72 F.3d 1200, 1207 (5th Cir.), <u>cert. denied</u>, 519 U.S. 807 (1996). The trial judge's assessment of any possible prejudicial effect carries considerable weight. <u>Munoz</u>, 150 F.3d at 415.

As mentioned, the prosecutor's questions came at the end of his cross-examination of Lopez. Prior questioning focused on

12

demonstrating the implausibility of Lopez's story, with questions highlighting such things as Lopez's inability to state the names of the two individuals he said helped him across the border, gave him keys to the Cavalier, and asked him to follow a truck to San Antonio; Lopez's testimony that he did not bring water with him on his journey; and his testimony that he did not smell anything unusual in the car. The jury could have easily understood the challenged queries as continuing the "implausibility" line of questions, and as leading to the conclusion that Lopez had fabricated his entire story for purposes of trial.

On brief, the Government does not negate that this was the intended effect. The Government states that the questions were asked in part to show that Lopez's "defensive theory had serious gaps as compared to the evidence already presented to the jury." Given that the prosecutor would have ample opportunity to highlight any inconsistencies in his concluding remarks, "gaps," to the extent that they existed, did not need to be highlighted further by a series of questions in violation of the order prohibiting reference to Lopez's post-arrest silence. Rather than highlighting inconsistencies across witnesses' testimony, it is more likely that the purpose of the questioning was to attack the plausibility of Lopez's defense by suggesting that his entire story had been fabricated.

The Government describes the purpose of the question regarding whether Lopez requested a lawyer upon arrest as countering impressions left by his testimony that he was

13

unsophisticated and "duped by three nameless individuals" and had "never smelled marijuana." Apparently, if Lopez knew enough to ask for a lawyer, he also knew what marijuana smelled like and how to avoid being duped by others.[3] "Comments that penalize a defendant for the exercise of his right to counsel and that also strike at the core of his defense cannot be considered harmless error." United States v. McDonald, 620 F.2d 559, 564 (5th Cir. 1980).

Our prior cases have demonstrated that the type of prosecutorial behavior reflected in this case has such a detrimental effect on a defendant's substantive rights that a new trial is warranted. See, e.g., United States v. Shaw, 701 F.2d 367, 383 (5th Cir. 1983), cert. denied, 465 U.S. 1067 (1984) (describing cases in which judgment has been reversed because of prosecutor use of defendant's silence). In Shaw, we noted that

> [W]e have reversed when we found that the remark "went to the heart of [the defendant's] sole defense," where the defendant's defense was "not so implausible as to be dismissed out of hand" and evidence of guilt was not overwhelming, and where the prosecutor had argued the substantive or impeachment possibilities of the testimony, or had directly tied the defendant's silence to the implausibility of his defense.

Id.(citations omitted); see also Velarde v. Shulsen, 757 F.2d 1093, 1095 (10th Cir. 1985) (per curiam) ("where the case comes down to a one-on-one situation, i.e., the word of the defendant against the word of the key prosecution witness, and where there

---

[3]   As the Government argued, "Put simply, Appellant did not know the difference between urban and rural but yet, he knew to ask for a lawyer."

14

is no corroboration on either side, the importance of the defendant's credibility becomes so significant that prosecutorial error attacking that credibility cannot be harmless beyond a reasonable doubt"); United States v. Johnson, 558 F.2d 1225, 1230 (5th Cir. 1977) (finding reversal required where testimony regarding defendant's post-arrest silence "went to the heart of the sole defense" of no knowledge of the cocaine found in her possession).

Given the magnitude of the prejudicial effect of the prosecutor's questions, we do not find the trial judge's pre-trial and post-closing-argument statements to the jury sufficient to render the effect of the prosecutor's questioning harmless. As a result, we conclude that the trial judge abused his discretion in denying Lopez's motion for a mistrial.

CONCLUSION

Because we find that prosecutorial misconduct prejudiced Lopez's rights to a fair trial, we REVERSE the conviction and REMAND to the district court for a new trial.