# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2009

Charles R. Fulbruge III
Clerk

No. 07-10627

EMANUAL DELEON FIELDS,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This court granted a certificate of appealability ("COA") authorizing Emanual Deleon Fields to appeal the district court's denial of his federal habeas claims under *Batson v. Kentucky*, 476 U.S. 79 (1986), with respect to the prosecution's peremptory strikes of three black prospective jurors. The district court held that the state court's decision that the prosecutor did not strike the jurors for racial reasons was not unreasonable and denied habeas relief. In this opinion we address various *Batson* related issues including comparative analysis of reasons given by the prosecutor for excluding blacks while retaining whites as jurors, the effect of faulty and silent transcripts, and the interplay between

specific state court findings of fact under § 2254(e)(1) and state court determinations of fact under § 2254(d)(2). After thorough consideration we conclude that Fields has failed to demonstrate a *Batson* violation. Accordingly, we AFFIRM the judgment of the district court.

I.

Fields was charged with aggravated robbery. His first jury trial ended in a mistrial. At his second trial, seventy persons were in the venire. Juror Number 8 was dismissed for cause before voir dire began. At the end of voir dire, Juror Number 42 was dismissed for cause. From the sixty-eight remaining individuals, there were seventeen agreed strikes. The parties then used their peremptory strikes (ten each), focusing on the group that remained, up through Juror Number 51. The trial court observed that there had been five black persons within the group remaining after the agreed strikes and that the prosecution had struck all five of them. At the court's invitation, Fields's counsel made a *Batson* challenge.

The prosecutor said that he struck Cathy Green (Juror Number 15) because her son had been convicted of assault in Dallas and because she had agreed with defense counsel that if a person stuttered that could indicate that the person was lying. The prosecutor said that he struck Randy Williams (Juror Number 22) because he had gold teeth, wore gold chains, and refused to express an opinion about the accused's right not to testify. The prosecutor said that he struck Kent Peterson (Juror Number 24) because he fell asleep during the prosecutor's voir dire examination and because he said that the accuser's credibility should be evaluated. The prosecutor said that he struck Darrell McAlpin (Juror Number 40) because he had a brother who had been convicted of robbery and because he had not admitted that he had a conviction for driving while intoxicated ("DWI"). The prosecutor said that he struck Wanda Brigham

(Juror Number 49) because she "has a brother that's in the penitentiary right now doing a two-year sentence."

Fields's counsel declined the court's invitation to cross-examine the prosecutor. He offered further objections to the strikes of Green, Williams, and Peterson. He did not challenge the prosecutor's reasons for striking McAlpin and Brigham. Defense counsel pointed out that Green said that she was not involved in her son's court proceedings, did not think that her son had been treated unfairly, and had not given any indication that she could not be fair in Fields's case. He argued that the strike of Williams was racially motivated because blacks and Hispanics are more likely to have gold teeth and wear gold chains than whites and Asians. With respect to the strike of Peterson, defense counsel pointed out that he had noticed another panel member, Ms. Haas (Juror Number 35), falling asleep and that he did not know if the prosecution had struck her. Defense counsel then stated: "Specifically those individuals we would object to them being struck by the State, and we allege that those strikes are based on racial reasons."

The trial court stated that it was satisfied with the State's explanations and overruled the *Batson* challenge. Fields told the judge that he felt that it was unfair that he had no blacks on his jury panel. The judge responded: "Your right is to not have them excluded on the basis of their race, and I see no evidence that that has occurred."

On direct appeal, Fields asserted a *Batson* claim with respect to the strikes of Green, McAlpin, and Brigham. He argued that the prosecution struck them for having relatives who had been arrested, charged, or convicted of crimes, but did not strike three whites who also had relatives who had been arrested, charged, or convicted of crimes. With respect to Green and McAlpin, the Texas court held that because the State gave additional, race-neutral reasons for striking them, Fields had not shown disparate treatment. With respect to

Brigham, the court stated that the white jurors who had relatives with criminal involvement were not similarly situated because none of them had a relative currently in prison as did Brigham. The Texas Court of Criminal Appeals refused Fields's petition for discretionary review.

The district court denied Fields's federal habeas petition and denied a COA. This court granted a COA for the following issues: (1) whether the state court's resolution of Fields's *Batson* claims as to Green, McAlpin, and Brigham was reasonable; and (2) whether the lack of record support for the prosecutor's reason for striking Brigham was sufficient to rebut the presumption of correctness under § 2254(e)(1).

II.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") governs a federal habeas court's review of a state prisoner's claims that were adjudicated on the merits in state court. 28 U.S.C. § 2254(d). Under the AEDPA, a federal court must defer to a state court's resolution of questions of law and mixed questions of law and fact unless the state court's "adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08. Two provisions of the AEPDA deal with factual determinations of state

courts. Relief is warranted under § 2254(d)(2) if the state court's "adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The second provision, § 2254(e)(1), provides that a state court's factual findings are presumed to be correct, unless the petitioner rebuts them with clear and convincing evidence.

The law governing *Batson* claims is clearly established. The Equal Protection Clause of the Fourteenth Amendment prohibits purposeful racial discrimination in the use of peremptory strikes of prospective jurors. *Batson*, 476 U.S. at 89. *Batson* claims are evaluated using a three-step analysis:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell (Miller-El I)*, 537 U.S. 322, 328-29 (2003) (citations omitted). The third step of *Batson* is at issue in this case. When the process reaches this step, the "defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrmination." *Miller-El v. Dretke (Miller-El II)*, 545 U.S. 231, 240 (2005) (quoting *Batson*, 476 U.S. at 96-97); *see also Hernandez v. New York*, 500 U.S. 352, 363 (1991) (an "invidious discriminatory purpose may often be inferred from the totality of the relevant facts") (internal quotation marks and citation omitted)). "[T]he critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Miller-El I*, 537 U.S. at 338-39 (internal quotation marks and citation omitted). "Whether a prosecutor

intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact." *Hernandez*, 500 U.S. at 367. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El II*, 545 U.S. at 241.[1]

Applying these governing principles, we turn to consider the strikes at issue. We will discuss the strikes of Green and McAlpin together, because the prosecutor gave more than one reason for striking each of them. The strike of Brigham is discussed separately because the prosecutor gave only one reason for striking her.

## A.

The prosecutor asked whether any panel members, their family members, or close friends had ever been arrested, charged, or convicted of a crime. Green replied that her son had been involved in a simple assault, involving his girlfriend, in Dallas, eight years before Fields's trial. The prosecutor asked if her son had been treated fairly, and Green replied that she did not know because she had not been involved in the proceedings. When asked if anything about her son's case would come into play in Fields's case, she said that it would not. The prosecutor said that he struck Green for two reasons: (1) her son had been convicted of an assault in Dallas; and (2) she had agreed with defense counsel that, if a person stutters, it could make the person look like he is lying or trying to hide something.

---

[1] The Supreme Court held recently in *Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203 (2008), that when a peremptory challenge is based on a potential juror's demeanor, "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id*. at ___, 128 S. Ct. at 1208. In Fields's case, the prosecutor's reasons for striking Green, McAlpin, and Brigham are not based on demeanor.

The voir dire transcript (erroneously, we conclude) reflects no questioning of any juror under the name of McAlpin. A likely explanation for this error is that the court reporter made a mistake in transcribing the name of the juror, as we shall see. After the prosecutor asked the question about prior charges, arrests, or convictions, he addressed each row of prospective jurors for follow-up questioning. The prospective jurors were identified by numbers. Cunningham was Number 39, McAlpin was Number 40, and Guss was Number 41. Based on the context, as well as the pattern of questioning used by the prosecutor throughout his voir dire examination, it appears that the court reporter mistakenly attributed McAlpin's response, regarding McAlpin's brother, to Cunningham. The fact that defense counsel did not challenge the prosecutor's statement that McAlpin had a brother who had been convicted of robbery supports this conclusion.[2] The portion of voir dire with respect to Cunningham, McAlpin, and Guss is quoted below, with the portion in bold print reflecting what were the responses of McAlpin, rather than Cunningham:

PROSPECTIVE JUROR CUNNINGHAM: My sister, DWI.

[Prosecutor]: Mr. Cunningham?

PROSPECTIVE JUROR CUNNINGHAM: Correct.

[Prosecutor]: Treated fairly?

PROSPECTIVE JUROR CUNNINGHAM: Very.

[Prosecutor]: Anything about that come into play?

---

[2] The transcript contains numerous other errors. For example, the court reporter identified a speaker as "Prospective Juror Knox," and later as "Mr. Cox." There was a "Kocks" and a "Nix" on the panel, but no one named "Knox" or "Cox." The court reporter identified prospective juror "Land" as "Lamb" on more than one occasion. The transcript of the prosecutor's questioning of prospective juror Guss includes a question by the prosecutor in part of a response by Guss.

PROSPECTIVE JUROR CUNNINGHAM: Not at all.

[Prosecutor]: Okay, thank you.

**PROSPECTIVE JUROR CUNNINGHAM: Brother.**

**[Prosecutor]: Brother here in Dallas?**

**PROSPECTIVE JUROR CUNNINGHAM: Yes.**

**[Prosecutor]: What kind of case?**

**PROSPECTIVE JUROR CUNNINGHAM: Robbery.**

**[Prosecutor]: How long ago was that?**

**PROSPECTIVE JUROR CUNNINGHAM: He's been out about ten years.**

**[Prosecutor]: About ten. This being a robbery, anything about that being --**

**PROSPECTIVE JUROR CUNNINGHAM: No.**

**[Prosecutor]: Do you think he was treated fairly?**

**PROSPECTIVE JUROR CUNNINGHAM: Yes.**

**[Prosecutor]: Okay.**

PROSPECTIVE JUROR GUSS: A nephew . . . .

In any event, the prosecutor stated that he struck McAlpin because (1) McAlpin had a brother who had been convicted of robbery; and (2) McAlpin failed to disclose that he had been convicted of DWI. The prosecutor offered to submit evidence of McAlpin's DWI conviction and then stated that he would have struck McAlpin based solely on his brother's conviction. The prosecutor noted that he had also struck two white jurors based on a family member's criminal conviction.

As we have already noted, defense counsel did not challenge the prosecutor's reasons for striking McAlpin.

Fields argues that the prosecutor's reasons for striking Green and McAlpin are pretextual because the prosecutor did not strike three similarly-situated whites who served as jurors: Holomshek (Number 4), Cunningham (Number 39), and Guss (Number 41). Holomshek stated that she had a brother in Dallas who was involved in a criminal case four years before Fields's trial. She did not know any of the details, but was sure that he had been treated fairly. Cunningham's response is quoted above. Guss responded that her nephew had been incarcerated for DWI and had been released in August, about two months before Fields's trial.

The Texas Court of Appeals referred to both McAlpin and Cunningham as having brothers who had been convicted of robbery. The court observed that Fields did not offer any rebuttal evidence and that he was making a disparate treatment claim for the first time on appeal. It stated, however, that a defendant is not required to request that a trial judge make findings on a *Batson* motion based on comparisons of veniremen in order to have the same evidence considered on direct appeal. The court held that, because Green's answer to the stuttering question and McAlpin's failure to disclose his DWI conviction provided race-neutral reasons for their strikes, the fact that the prosecutor did not strike other white jurors who had close relatives who had been convicted of crimes was not sufficient to establish disparate treatment.

This court's grant of a COA was premised on the conclusion that the Texas Court of Appeals did not engage in a comparative juror analysis. The State, however, challenges that premise. In *Reed v. Quarterman*, 555 F.3d 364, 372-75 (5th Cir. 2009), this court concluded that *Miller-El II* requires a comparative juror analysis even if it was not presented in state court. In *Woodward v. Epps*, 580 F.3d 318 (5th Cir. 2009), however, the court observed that "[c]apital cases

employ different standards than noncapital cases at times," and noted that our court has held that a defendant may waive a *Batson* claim based upon comparative juror analysis if, during voir dire, he failed to rebut the State's race-neutral reasons for striking black jurors. *Id*. at 338 (citing *United States v. Arce*, 997 F.2d 1123, 1127 (5th Cir. 1993) (holding that "[b]y failing to dispute the prosecutor's . . . explanation in the district court, defendants have waived their right to object to it on appeal."))[3]. It is difficult to tell whether the Texas court (1) actually engaged in a comparative juror analysis and concluded that the strikes of Green and McAlpin were not discriminatory because of the other race-neutral reasons given for the strikes; or (2) concluded that a comparative analysis between Green, McAlpin, and the white jurors who served was not necessary because they were not similarly situated. We need not resolve that question, however, because even if we assume that the Texas court did not perform a comparative analysis or that it did and that its analysis was inadequate under *Miller-El II* or *Batson*, its decision that Fields had not shown disparate treatment with respect to the strikes of Green and McAlpin is not unreasonable.

In *United States v. Brown*, 553 F.3d 768 (5th Cir. 2008), the prosecutor did not strike a white venire member who had a DUI conviction, but struck a black venire member who had a conviction for resisting arrest. *Id*. at 796. This court held that Brown's *Batson* claim failed because the prosecution had provided a

---

[3] This court's opinion in *Haynes v. Quarterman,* 526 F.3d 189 (5th Cir. 2008), a capital case, cited *Arce* in support of its rejection of the petitioner's *Batson* claim with respect to one prospective juror, stating that "since the defendant similarly acquiesced [by failing to dispute the prosecution's explanation] in the present case, the district court could properly accept the state trial court's acceptance of the prosecutor's explanation as race-neutral." 526 F.3d at 200. To the extent that there is any inconsistency between *Haynes, Reed*, and *Woodward,* such inconsistency does not affect the outcome of Fields's noncapital case.

second, legitimate reason for striking the black juror: his failure to report on his juror questionnaire a second, more recent conviction for assault. *Id.* In Fields's case, the prosecutor struck Green and McAlpin based not only on their having relatives with criminal involvement, but also based on additional, race-neutral reasons (Green's answer to the stuttering question and McAlpin's failure to disclose his own DWI conviction). Although defense counsel argued on direct appeal that three white jurors with relatives who had criminal involvement served on the jury, the defense offered nothing – either at trial or on appeal – to rebut the second reasons for the prosecutor's strikes or to show that those reasons were pretextual. Because Fields did not dispute the prosecutor's additional reasons for striking Green and McAlpin, the state court did not unreasonably accept those explanations. *See Haynes*, 526 F.3d at 200 (court can accept prosecutor's race-neutral explanation if the explanation is facially valid and the defendant does not object).

Fields has not shown that the state court's decision that the prosecutor did not purposefully discriminate on the basis of race in striking Green and McAlpin is an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), or that it is an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2). Furthermore, he has not rebutted with clear and convincing evidence the state court's factual determination that the strikes of Green and McAlpin were not racially motivated. We now turn to consider the strike of Brigham.

B.

In response to the prosecutor's question about whether any of the panel members, their family members or close friends had ever been arrested, charged, or convicted of a crime, the following dialogue occurred between the prosecutor and Brigham:

[Brigham]: Brother.

11

[Prosecutor]: Here in Dallas?

[Brigham]: Yes.

[Prosecutor]: What kind of case?

[Brigham]: He took people – well, he broke – he was on probation and broke probation in State Jail.

[Prosecutor]: Was he treated fairly or not?

[Brigham]: Yeah.

[Prosecutor]: Anything about that come into play?

[Brigham]: Hum?

[Prosecutor]: Anything about that --

[Brigham]: He was in Court.

[Prosecutor]: Anything, though, if you're on the jury, if you got to punishment, would you start thinking about your brother or anything?

[Brigham]: No.

[Prosecutor]: Okay. All right.

In response to the *Batson* challenge, the prosecutor stated that he struck Brigham because she had "a brother that's in the penitentiary right now doing a two-year sentence." Defense counsel did not challenge that assertion, even though there is nothing in the record to support the prosecutor's assertions that Brigham's brother (1) was in jail at the time of voir dire or (2) had received a two-year sentence.

The Texas Court of Appeals denied Fields's *Batson* claim as to Brigham because "[o]f the three jurors seated who had relatives previously convicted of

a crime, none had a relative currently in prison as did Juror 49. Consequently, these jurors were not 'similarly situated.'" The district court concluded that the state court's finding regarding discriminatory intent was not objectively unreasonable under the AEDPA and that even if the AEDPA standard of review did not apply, Brigham was not similarly situated to white jurors who shared some, but not all, of the same characteristics.

There is no support in the record for the prosecutor's statement that Brigham's brother was serving a two-year prison sentence at the time of voir dire. That was the only basis upon which the Texas Court of Appeals affirmed the finding of no discrimination as to Brigham. Fields argues that the state court's factual finding as to Brigham's brother should not be presumed correct under 28 U.S.C. § 2254(e)(1) because the record established by clear and convincing evidence that the prosecutor's stated basis for striking Brigham was mischaracterized. Fields contends further that the state court's decision was an unreasonable determination of the facts under § 2254(d)(2), because Brigham was similarly situated with the three white jurors who had close relatives with criminal convictions.

The State responds that, although it is not clear how the prosecutor learned that Brigham's brother was serving a two-year sentence, any discrepancy in the record is insufficient to overcome the presumption of correctness. The State argues that Fields has not provided any evidence that Brigham's brother was not in prison at the time of voir dire and points out that his counsel did not object to the prosecutor's statement.

Although a lack of fair support in the record was sufficient to rebut a presumptively correct factual finding under pre-AEDPA law, the AEDPA increased the level of deference due to a state court's factual findings. *See Pondexter v. Dretke*, 346 F.3d 142, 149 n.9 (5th Cir. 2003); *but see Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002) (stating, in a post-AEDPA case, that

13

federal habeas courts "are required to accord a presumption of correctness to state court findings of fact, unless they lack fair support in the record"). The Third Circuit has held that "[s]ilence in the record is insufficient to overcome" the § 2254(e)(1) presumption of correctness. *Washington v. Sobina*, 509 F.3d 613, 621 (3d Cir. 2007). Thus it is unclear whether the lack of record support for the prosecutor's reason for striking Brigham constitutes clear and convincing evidence to rebut the presumptively correct state court factual finding that Brigham was not similarly situated to the whites who were not struck by the prosecutor.

Furthermore, there is currently a split among the circuits regarding the applicability of § 2254(d)(2) and § 2254(e)(1). In *Miller-El I*, the Supreme Court held that it was incorrect for this court "to merge the independent requirements of §§ 2254(d)(2) and (e)(1)." 537 U.S. at 341. "The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions. Subsection (d)(2) contains the unreasonable requirement and applies to the granting of habeas relief rather than to the granting of a COA." *Id*. at 341-42. The Court stated that after a COA is granted, the reviewing court must "determine whether the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." *Id*. at 341. The Court stated that "[t]o secure habeas relief, petitioner must demonstrate that a state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." *Id*. at 348.

In *Rice v. Collins*, 546 U.S. 333, 339 (2006), the Court noted that the parties disagreed about whether and when the § 2254(e)(1) presumption was

applicable during a § 2254(d)(2) review, but declined to resolve the disagreement.

In a case decided prior to *Miller-El I*, this court described the two provisions in a manner very similar to the Supreme Court's description in *Miller-El I*:

> Whereas § 2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues. For example, a district court may find by clear and convincing evidence that the state court erred with respect to a particular finding of fact, thus rebutting the presumption of correctness with respect to that fact. *See* § 2254(e)(1). It is then a separate question whether the state court's *determination* of facts was unreasonable in light of the evidence presented in the state court proceeding. *See* § 2254(d)(2). Thus, it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2).

*Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001). The Third, Fourth, Seventh, and Eighth Circuits appear to have a similar understanding of these AEDPA provisions that govern review of state court factual determinations. *See Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004) ("the language of § 2254(d)(2) and § 2254(e)(1) implies an important distinction: § 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in the state-court proceeding,' while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record." (citing *Valdez* and *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004)); *Lenz v. Washington*, 444 F.3d 295, 300 (4th Cir. 2006) (in determining whether state court's conclusion is an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, court presumes state

court's factual findings to be correct unless rebutted by clear and convincing evidence); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (Notwithstanding assumption that petitioner has overcome presumption of correctness of two factual statements of state court by clear and convincing evidence, "it does not necessarily follow that the state court adjudication was based on an unreasonable determination of facts because subsection (d)(2) instructs federal courts to evaluate the reasonableness of the state court decision 'in light of the evidence presented in the State court proceeding'"); *Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008) (§ 2254(e)(1) provides mechanism for proving unreasonableness under § 2254(d)(2); if petitioner shows that state court determined an underlying factual issue against clear and convincing weight of evidence, petitioner has gone a long way towards proving that it committed unreasonable error).

The Ninth Circuit has held that § 2254(d)(2) applies when a petitioner challenges the state court's findings based entirely on the state record, and that § 2254(e)(1)'s presumption of correctness and clear-and-convincing standard of proof apply only when the habeas petitioner presents new evidence for the first time in federal court. *Taylor*, 366 F.3d at 999-1000; *see also Kesser v. Cambra*, 465 F.3d 351, 358 n.1 (9th Cir. 2006) (en banc). The Eleventh Circuit observed that "the plain language of § 2254 does not provide the basis for such a distinction." *Prevatte v. French*, 547 F.3d 1300, 1304 n.1 (11th Cir. 2008). The First Circuit noted that the relationship between § 2254(d)(2) and § 2254(e)(1) has caused confusion and has not yet been definitely resolved. *See Teti v. Bender*, 507 F.3d 50, 57-58 (1st Cir. 2007).

This term, the Supreme Court is considering a case involving the applicability of § 2254(d)(2) and § 2254(e)(1). *Wood v. Allen*, 542 F.3d 1281 (11th Cir. 2008), *cert. granted*, 129 S. Ct. 2389 (2009). In that case, the petitioner, Wood, argued that in a case which is based only on evidence that was presented

in state court, the habeas court should apply only § 2254(d)(2), and that § 2254(e)(1) applies only in cases involving evidence that was not presented in state court. The respondent argued that § 2254(e)(1) applies in every case, irrespective of whether the evidence was presented in state court.

The issue on which the circuits are split – that is, the question whether § 2254(e)(1) applies when, as in Fields's case, the petitioner's claim is based only on evidence that was presented in state court – is not outcome-determinative in Fields's case. Assuming that § 2254(e)(1) applies, and that the lack of record support for the prosecutor's reason for striking Brigham constitutes clear and convincing evidence sufficient to rebut the presumption of correctness, Fields has not established that the state court's decision that the prosecutor did not engage in purposeful racial discrimination in striking Brigham is unreasonable in the light of the evidence presented in the state court proceeding, which he must do in order to obtain habeas relief pursuant to § 2254(d)(2).

The prosecutor gave a facially valid, race-neutral explanation for striking Brigham, and the defense did not challenge it. By failing to dispute the prosecutor's explanation, Fields appeared to acquiesce. *See Haynes*, 526 F.3d at 200. Because Fields did not object to the reason stated by the prosecutor, the state court did not unreasonably accept that explanation and did not unreasonably determine that Brigham was not similarly situated with the whites who had relatives with criminal involvement.

Although the record lacks support for the prosecutor's statement that Brigham's brother was in prison serving a two-year sentence at the time of voir dire in Fields's case, the voir dire examination, viewed in its entirety, reflects that both the prosecutor and defense counsel were aware of various facts about the venire members that do not appear anywhere in the record.[4] Perhaps the

---

[4] When questioning Green, the prosecutor indicated that he knew that her husband was retired. Defense counsel was aware of the birth date of one of the jurors, noting that it, like

17

jurors filled out cards or questionnaires; if so, they are not part of the record. Perhaps the prosecutor ran a criminal background check on each of the prospective jurors and their relatives, or perhaps the prosecutor knew of the conviction because he had been involved in the case. We do not know. What is clear, however, is that the record reflects that both the prosecutor and Fields's counsel knew various facts about the prospective jurors, including that McAlpin had an undisclosed DWI conviction. Viewed in context, defense counsel did not object to the prosecutor's statement about Brigham's brother because he either knew it to be a fact, or had no reason to believe that the prosecutor's statement was inaccurate. In sum, based on our review of the record, there is no basis for this court to conclude that the state court's decision in this case – that is, the decision that the prosecutor did not purposefully discriminate on the basis of race – is an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding.

Although Fields, like Miller-El and Reed, was tried in Dallas County, the similarities end there. Fields's trial took place in Dallas County in October 2002, long after the trials of Miller-El and Reed in 1986 and 1983, respectively. *See Miller-El I*, 537 U.S. at 328; *Reed*, 555 F.3d at 366, 371. There is no evidence that the now infamous Sparling Manual, outlining the reasoning for excluding minorities from jury service, was still in use by Dallas County prosecutors when Fields's case was tried. *See Miller-El II*, 545 U.S. at 264; *Reed*, 555 F.3d at 382. There were no jury shuffles like the ones found to have been used for discriminatory reasons in Miller-El's case. *See Miller-El II*, 545 U.S. at 254. There were no "trick" questions by the prosecutor, *id*. at 261, and the prosecutor did not use different "scripts" for jurors of different races. *Id*. at 255-57. The transcript of the voir dire examination in Fields's case indicates that the

_____

his own, was close to Christmas Day.

18

prosecutor asked nearly identical questions of all of the prospective jurors. The trial judge, noticing that the prosecutor had peremptorily struck all five of the blacks remaining after agreed strikes, invited defense counsel to make a *Batson* challenge. When the prosecutor said that he struck Randy Williams because of gold teeth and gold chains, the trial judge pressed the prosecutor for further explanation as to why his reasons for the strike were not racially motivated. Fields's counsel was invited to cross-examine the prosecutor after the prosecutor gave his reasons, but declined, and only challenged the prosecutor's reasons for striking Green, Williams, and Peterson. In sum, the strongest evidence of racial discrimination in this case is the fact that the prosecutor struck all five of the blacks remaining in the venire after challenges for cause and agreed strikes. Although that is indeed convincing statistical evidence, *see Miller-El II*, 545 U.S. at 241, it is not enough to support the granting of habeas relief, where the habeas petitioner fails to rebut the State's race-neutral reason for striking a juror. *See Woodward*, 580 F.3d at 340 ("where [petitioner] fails to rebut the State's race-neutral reason for striking a juror, evidence of race standing alone offers little evidence of discriminatory intent").

In sum, state court's decision that Brigham was not peremptorily struck because of her race is not an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding. Accordingly, the district court did not err by denying habeas relief on Fields's *Batson* claim with respect to Brigham.

## III.

For the foregoing reasons, the judgment of the district court denying habeas relief is

AFFIRMED.